**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

Case No.: 2:25-cv-01197-JPS

CHET MICHAEL WILSON, individually
and on behalf of all others similarly situated,

     Plaintiff,

TABAK LAW, LLC,

     Defendant.

_____/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION OR,**
**ALTERNATIVELY, TO DISMISS WITH SUPPORTING MEMORANDUM**

     Defendant Tabak Law, LLC, by the undersigned counsel and pursuant to the Federal Rule of Civil Procedure 12(b) and Civil L. R. 7, files this motion and supporting memorandum of law and moves to compel arbitration of Plaintiff's two Telephone Consumer Protection Act ("TCPA") claims, and to stay this action until such arbitration has been had in accordance with the terms of the agreement or, alternatively, moves to dismiss.

# TABLE OF CONTENTS

**MEMORANDUM OF LAW**

I.     PREFACE…………………………………………………………………………1

II.    FACTUAL BACKGROUND…………………………………………………………..2

        A.     Illustration 1: Screen Recording Screenshot………………………………………3

III.    ARGUMENT………………………………………………………………………...6

        A.     There is a valid and enforceable "clickwrap" contract that provides for arbitration of disputes……………………………………………………………………6

                1.     The Site provided reasonably conspicuous notice of the Terms to which the user would agree and be bound……………………………………9

                2.     The elements of a valid enforceable contract are met…………………10

        B.     There is clear and unmistakable evidence that the parties agreed for the arbitrator to decide the question of arbitrability……………………………………………12

        C.     Even if the Court determines arbitrability has not been delegated to the arbitrator, the arbitrator must decide the remainder of the issues……………………………14

                1.     There is an enforceable written agreement to arbitrate………………14

                2.     There is a dispute within the scope of the arbitration agreement….......15

                3.     There is a refusal on plaintiff's part to arbitrate………………………16

        D.     Additional issues exclusively for the arbitrator……………………..……………16

                1.     When plaintiff submitted his phone number, he gave permission and consent to be contacted by an intermediary…………………….......16

                2.     Tabak Law is a named third-party beneficiary of the Terms…………………………………………………………………20

                3.     A non-signatory may compel arbitration under various circumstances……………………………………………………...20

        E.     Plaintiff lacks standing because he does not sufficiently allege a concrete harm………………………………………………………………………...22

i

IV.     CONCLUSION………………………………………………………………..24

ii

# TABLE OF AUTHORITIES

**CASES:**

*Andersen v. Harris & Harris, Ltd.*, No. 13-CV-867-JPS, 2014 WL 1600575 (E.D. Wis. Apr. 21, 2014)…………...........................................................................................................................18

*Appleton Papers Inc. v. Mason and Dixon Lines, Inc.*, No. 03-C-415*,* 2005 WL 8162776 (E.D. Wis. Mar. 15, 2005)………………………………………………………………………10

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)………………………………………..20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)………………………………………19

*Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 521 (E.D. Wis. 2014)………………………19

*Bernal v. Kohl's Corp.,* 749 F. Supp. 3d 971 (E.D. Wis. 2024)…………………………………14

*Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017)……………………………………………….18

*Boehm v. Getty Images (US), Inc.*, No. 16-CV-311-JDP, 2016 WL 6110058 (W.D. Wis. Oct. 19, 2016)………………………………………………………………………………………………..12

*Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019)………………………...22, 23

*Colfax Envelope Corporation v. Local 458–3M, Chicago Graphic Communications International Union, AFL-CIO*, 20 F.3d 750 (7th Cir. 1994)………………………………………………………15

*Deputy v. Lehman Bros.*, 345 F.3d 494 (7th Cir. 2003)…………………………………………10

*Dist. Council No. 7 v. Pepper Constr. Co.*, No. 20-CV-912-PP, 2023 WL 2760531 (E.D. Wis. Mar. 30, 2023)…………………………………………………………………………………....21

*Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024)…………………………………6, 9

*Dunn v. Pertzsch Constr. Co.*, 38 Wis. 2d 433 (1968)………………………………………….21

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)…………………………………13

*Friends of the Earth v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167 (2000)………23

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020)……………………………………………………………………………………..20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)…………………………..12

iii

*Hodge Bros. v. DeLong Co.*, 942 F. Supp. 412, 415 (W.D. Wis. 1996)……………………………13

*Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981)…….21

*Hulce v. Zipongo, Inc.*, 132 F.4th 493, 500 (7th Cir. 2025)…………………………………………..24

*In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 ("GroupMe"), 29 F.C.C. Rcd. 3442 (2014)*……………………………………………………………………………16

*Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010)…………………………………14

*Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020)………………………...22, 23

*Lathan v. Uber Technologies, Inc.*, 266 F. Supp. 3d 1170 (E.D. Wis. 2017)………………………13

*Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110 (11th Cir. 2014)……………………19

*Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267 (7th Cir. 2021)…………………22

*Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629 (7th Cir. 1984)……………………………………15

*Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d 932 (E.D. Wis. 2019)……………...6, 10, 11

*Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022)………………………………23

*Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978 (2008)………………………………………………6

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395 (1967)…………...14, 15

*Protective Life Ins. Co. v. Hansen*, 632 F.3d 388 (7th Cir. 2011)…………………………………20

*Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63 (2010)……………………………………13, 15

*Schacht v. Beacon Ins. Co.*, 742 F.2d 386 (7th Cir. 1984)……………………………………………15

*Scheurer v. Fromm Fam. Foods LLC*, 202 F. Supp. 3d 1040 (W.D. Wis. 2016), *aff'd,* 863 F.3d 748 (7th Cir. 2017)……………………………………………………………………………...21

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), *as revised* May 24, 2016…………………………23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)…………………………………………………23

*Treiber & Straub Inc. v. Stanley Convergent Sec. Sols. Inc.*, 572 F. Supp. 3d 633 (E.D. Wis. 2021)……………………………………………………………………………………...10

iv

*Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692 (1966)……………………………………21

*Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682 (7th Cir. 2005)………………21

**STATUTES:**

9 U.S.C. §§ 1-9………………………………………………………………………..2, 6, 14, 24

**SECONDARY SOURCES:**

Restatement (Second) of Contracts § 202 Rules in Aid of Interpretation (1981)…………………5

## MEMORANDUM OF LAW

## I. PREFACE

"DisabilityPath.com" is an online internet service that ***connects*** individuals seeking social security disability benefits with experienced lawyers – "Third-Party Legal Professionals" – who help these individuals navigate the benefits application process to increase the odds of benefits approval. Disability Path's Terms and Conditions ("Terms") set the conditions for use of the DisabilityPath.com website.[1] Tabak Law, LLC is a Social Security Disability, Worker's Compensation, Veteran's Benefits, and personal injury law firm based in Milwaukee, Wisconsin. Tabak Law is one of the "Third-Party Legal Professionals" that DisabilityPath, as an intermediary, connects with clients seeking such help. Tabak Law is specifically identified by name on the DisabilityPath Site as a marketing partner and is a third-party beneficiary of the Terms. DisabilityPath connected plaintiff with Tabak Law after plaintiff submitted a form with his information.

Chet Michael Wilson ("plaintiff") on May 5, 2025 visited the DisabilityPath Site.[2] While on the Site, plaintiff filled out and submitted a form using his telephone number (541) XXX-9999, but using the name "Tia Shade." The submitted form requested a Third-Party Legal Professional review of his case. By affirmatively "clicking" the buttons "Get FREE Case Review" and "See

---

[1]     "DisabilityPath" is owned by Performek, Inc. (hereinafter "DisabilityPath"), https://lp.disabilitypath.com/analytics-email-new-copy/page_vjdh8/ (hereinafter "Site"). DisabilityPath.com is ***not*** a party to this action. This motion is supported by the Declaration of Mukund Bhagavan, the CEO of Performek, Inc., which is cited herein, for example, by exhibit and page number as Bhagavan Declaration, Exhibit A (or B)-_ , pp. ___ [Attachment description].

[2] This case is yet another stop in plaintiff's long-running campaign of exploiting the TCPA for personal profit rather than legitimate redress. Plaintiff is a professional TCPA litigant. As the public record establishes, plaintiff in the last two years alone has filed nearly sixty (60) TCPA lawsuits across the country and proudly touts his role as the named plaintiff. In public forums, Plaintiff brags about his earnings from simply bringing TCPA lawsuits—an admission that lays bare his true motive: monetizing litigation rather than vindicating any genuine privacy interest. This pattern of conduct not only undermines the integrity of the judicial process but also raises serious questions about standing, good faith, and abuse of statutory remedies. Plaintiff is not a victim of unlawful telemarketing; he is a serial litigant who has turned the TCPA into a personal, income producing business model.

1

What I Am Eligible For," plaintiff agreed to DisabilityPath's Terms. Among other things, the Terms require arbitration of disputes and waive class action claims. Plaintiff, however, ignores the very existence of DisabilityPath and certainly ignores the Terms and the plain express consent he gave to being contacted. This matter must be compelled to arbitration for several separate reasons.

First, the Terms represent a "clickwrap" agreement. The Terms contain a valid and enforceable arbitration clause. Second, the Terms call for the application of the Commercial Rules of the American Arbitration Association ("AAA"). Reference to the AAA rules is clear and unmistakable evidence that the question of arbitrability, that is, the formation of a written arbitration agreement, is decided by the arbitrator. Third, even if the Court determines arbitrability has not been delegated to the arbitrator and the Court undertakes the issue of whether there is a written, enforceable contract containing an arbitration clause, the arbitrator still must decide all other issues. Fourth, plaintiff consented to receive text messages – which is the arbitrator's issue to decide – when plaintiff knowingly provided his telephone number (541) XXX-9999 and gave permission to be contacted; and he conveyed his consent to Tabak Law through an intermediary, DisabilityPath.

Finally, Tabak Law is a named third-party beneficiary of the Terms, including the arbitration provision, and plaintiff lacks Article III standing because he has not alleged he – personally – suffered an actual concrete and particularized injury based on receiving purportedly unlawful text messages. For the reasons argued herein, plaintiff must be compelled to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-9 ("FAA").

## II.     FACTUAL BACKGROUND

Plaintiff visited the DisabilityPath Site[3] and opted-in to receive text messages. While

---

[3] https://www.disabilitypath.com/dp-home.

2

browsing the Site, he clicked several boxes to initiate and "Get FREE Case Review" for Social Security Administration ("SSA") eligibility and SSA pre-screening. That initial click redirected him to a series of questions and additional boxes; each box required an affirmative click to move to the next box.

## A.      Illustration 1: Screen Recording Screenshot

The user then ends up at Illustration 1. Illustration 1 depicts screenshots from a recording of plaintiff visiting the Site and inputting "opt-in" information, including his telephone number. The plaintiff typed in the name "Tia Shade" and typed in plaintiff's telephone number (541) XXX-9999. which are tracked in the Event History and Event Log.[4]



---

[4] A website ***event log*** is a record of significant actions or occurrences that happen on a website and typically includes details such as: user activity (e.g., logins, clicks, form submissions); system events (e.g., errors, warnings, updates); security-related actions (e.g., failed login attempts, permission changes); timestamps for when each event occurred. A **website event history** refers to a detailed, chronological record of all significant actions and changes that may occur on a website, such as **user interactions** (e.g., logins, form submissions, page views).

3



Bhagavan Declaration A-3, pp. 4-5 [Screen Recording Screenshots].

On the same page, the form contained the following:



4

*Id.* By clicking the button "See What I Am Eligible For," plaintiff "opted-in" and acknowledged that he requested a "free" case evaluation and gave consent for marketing partners to contact him by calls or SMS automated technology at the number plaintiff provided, and agreed to the Terms and Conditions and the incorporated Privacy Policy, which is clearly referenced and enforceable as part of the Terms.[5] In the Terms, plain and simple, plaintiff agreed:[6]

> to the DisabilityPath Website Terms and Conditions ("Terms and Conditions"), in their entirety, when she/he: …. (d) ***utilizes the various contact forms and/or contact information made available on the Site as a means to contact directly, or request to be contacted by***, Company and/or ***attorneys*** or providers associated with the Legal Matters specified by you in connection with the contact form (collectively, ***the "Third-Party Legal Professionals"***) (collectively, the "Contact Services," and together with the Site, Content and Social Media Pages, the "Site Offerings").

> The following Terms and Conditions are inclusive of the DisabilityPath Privacy Policy ("Privacy Policy") and any and all other applicable operating rules, policies, price schedules and other supplemental terms and conditions or documents that may be published from time to time, which are expressly incorporated herein by reference (collectively, the "Agreement").

> \*\*\*

> **THE AGREEMENT CONTAINS DISCLAIMERS OF WARRANTIES, LIMITATIONS OF LIABILITY, RELEASES, A CLASS-ACTION WAIVER, AND THE REQUIREMENT TO ARBITRATE ANY AND ALL CLAIMS THAT MAY ARISE HEREUNDER. THE AFOREMENTIONED PROVISIONS ARE AN ESSENTIAL BASIS OF THE AGREEMENT**.

> \*\*\*

> Dispute Resolution Provisions. The Agreement shall be treated as though it were executed and performed in Orange County in the State of California and shall be governed by and construed in accordance with the laws of the State of California (without regard to conflict of law principles). ***Should a dispute arise between you and either the Company or a Third-Party Legal Professional concerning the Site***

---

[5] Restatement (Second) of Contracts § 202 Rules in Aid of Interpretation (1981): "(1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight. (2) A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."

[6] Bhagavan Declaration Exhibit B-1, p. 1 [Terms and Conditions] (emphasis added).

5

***Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto***: (a) each party agrees to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association; and (b) you agree to first commence a formal dispute proceeding by completing and submitting an Initial Dispute Notice which can be found here.[7]

## III.  ARGUMENT

### A.  There is a valid and enforceable "clickwrap" contract that provides for arbitration of disputes.

The FAA, Title 9, Section 2 of the United States Code provides:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As a threshold matter, moving to compel arbitration requires a valid, irrevocable, and enforceable written contract. *Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d 932, 944 (E.D. Wis. 2019). The first question this Court must consider is whether there is a contract that provides for arbitration. Under Wisconsin law, clickwrap agreements are enforceable. Wisconsin courts require two key elements for a clickwrap contract to be enforceable: (1) the website must provide reasonably conspicuous notice of the terms to which the user will be bound; and (2) the user must take an action, such as clicking a button or checking a box, that unambiguously manifests assent to those terms. *See Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). These principles ensure that users are adequately informed and that their agreement to the terms is intentional and clear. *Domer*, 116 F.4th at 694.

---

[7] The arbitration provision calls for the application of California law, which does not invalidate the arbitration provision or affect the analysis here. The Supreme Court has held that an arbitration provision's incorporation of the AAA Rules – as is the case here – supersedes a choice-of-law provision contained in the same agreement. *See Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978, 989 (2008) (explaining that the "best way to harmonize the parties' adoption of the AAA Rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's special rules limiting the authority of arbitrators.").

6

Plaintiff visited the Site, entered an alias or fictitious name (*i.e.*, "Tia Shade"), entered plaintiff's phone number (541) XXX-9999, checked the clickbox agreeing to the Terms, and submitted the opt-in to DisabilityPath. *See* Illustration 1. In addition to the Screen Recording Screenshot, three documents evidence the opt-in for the telephone number plaintiff claims is his number: (1) the Event Log, (2) the History Log, and (3) the "Certificate of Authenticity for Web Leads," (the "TrustedForm"), issued by TrustedForm.com (Active Prospect) an independent internet lead certification authority.[8]

When looking at the Event Log, starting at the bottom and tracing upwards, it shows the date (*e.g.,* 2025/05/05), time (*e.g.,* 10:51:59), and action (*e.g., "certificate created")* of plaintiff's visit to the Site:[9]

| 2025/05/05 | 10:52:00 | resized the window |
| 2025/05/05 | 10:52:00 | clicked on [fname] |
| 2025/05/05 | 10:51:59 | certificate created |

The Event Log shows what actions, characters, or letters is being taken or entered by the user. For example (reading bottom up and left to right), you can see the name "Tia Shade" and telephone number "(XXX) 999-9999" being typed into the dialogue box and when the competed opt-in form was submitted (*i.e.,* "2025/05/05 10:52:17"):

---

[8] *See* Bhagavan Declaration, Exhibit A-1 – A-4, pp. 1- 7 [Event Log, History Log, Screen Recording Screenshots, Certificate of Authenticity for Web Leads].

[9] *See* Bhagavan Declaration, Exhibit A-1, pp. 1-2 [Event Log].



The TrustedForm here identifies the telephone number entered into the opt-in dialogue box and reflects who visited the Site, when and where they visited, and what they saw.[10] As the TrustedForm, Event Log, History Log, and Illustration 1 discussed above demonstrate, plaintiff imputed his number (541) XXX-9999, "clicked the button," and accepted the Terms, creating a clickwrap enforceable contract calling for arbitration.

Setting aside for the moment the question of who, the Court or the arbitrator, decides whether there is an enforceable clickwrap agreement containing an arbitration agreement, both elements to form a clickwrap contract are present here as are the elements to the formation of a valid, enforceable contract containing an arbitration clause under state law.

---

[10] *See* Bhagavan Declaration, Exhibit A-1, pp. 1-2 [Event Log].

**1. *The Site provided reasonably conspicuous notice of the Terms to which the user would agree and be bound.***

When deciding whether an online disclosure afforded fair notice, courts consider such things as (i) the simplicity of the screen; (ii) the clarity of the disclosure; (iii) the size and coloring of the disclosure's font; (iv) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action. *Domer*, 116 F.4th at 695. No single factor is dispositive: the question is whether the website provided reasonable notice "in light of the whole webpage." *Id.* The screenshots of the Site (*e.g.,* Illustration 1) simply, clearly, and conspicuously ask for two pieces of information: (1) the user's full name, and (2) a phone number. The page in Illustration 1 in plain language states:

> By clicking 'See What I Am Eligible For', I provide express written consent to Disability Path and one or more disability firms, their agents, and **marketing partners**, to contact me via calls, SMS, and prerecorded or artificial voice messages using automated technology at the number provided above, even if my telephone number is listed on any Do Not Call Registry, for marketing purposes in order to assist with my request for a free case evaluation. Consent is not required as a condition of service. Please review our **privacy policy** for more details.

Illustration 1.[11] The user, plaintiff here, without any "timed-out" constraints, can read and fully consider the language. If the user fills in the name and phone number, the user is free to do nothing and can leave the page without checking the submit "Get FREE Case Review" button, or the user can check the submit button, submitting the name and number to DisabilityPath and thereby agreeing to the Terms. By clicking the "Get FREE Case Review" and "See What I Am Eligible For" buttons, plaintiff here clearly and unmistakenly assented to the Terms, including the arbitration clause. *See, e.g., Domer*, 116 F.4th at 686 (finding that customer unambiguously

---

[11] By express language, the Terms explain to plaintiff that "Upon entering User Data and clicking on the applicable submission button on the Site, Company may pass your User Data along to one (1) or more of its Third-Party Legal Professionals. Each User agrees to provide true, accurate, current and complete User Data. Company's use of User Data shall be governed by the Privacy Policy. For a copy of the Privacy Policy, please click here."

9

assented to terms, including arbitration, by clicking the "SUBMIT ORDER" button on store's online checkout page and that, although there was no specific "I agree button," the store provided objectively reasonable notice of terms through spatial and coupling of terms with the registration button). Plaintiff cannot evade the opt-in by claiming that he did not read the Terms or that he is not "Tia Shade" – because there is no dispute that his telephone number was used to opt-in.

A Court in this District recently reiterated the "fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Treiber & Straub Inc. v. Stanley Convergent Sec. Sols. Inc.*, 572 F. Supp. 3d 633, 639 (E.D. Wis. 2021) (cleaned up). This is so even where the signatory claims not to have read the contract. *See id.* at 640 (citing *Appleton Papers Inc. v. Mason and Dixon Lines, Inc.*, No. 03-C-415, 2005 WL 8162776, at *4 (E.D. Wis. Mar. 15, 2005) ("Obviously, a party who signs a contract cannot avoid its terms by failing to read them."). The presumption that signatories have read contracts aligns with broader principles of Wisconsin law. In *Deputy v. Lehman Bros.*, 345 F.3d 494, 512 (7th Cir. 2003), the Court held that the execution of an unambiguous written contract establishes an enforceable meeting of the minds as a matter of law, regardless of the parties' actual intentions. Signing a contract signifies agreement to the terms. *Id.*

### 2. The elements of a valid, enforceable contract are met.

Further, under Wisconsin law and on the facts here, each of the traditional elements of an enforceable contract, offer, acceptance, and consideration are present. *Nevill v. Johnson Controls Int'l PLC*, 364 F. Supp. 3d 932, 944 (E.D. Wis. 2019) (cleaned up). The first element is an offer, which is communication by a party of what it will give or do, looking to the future, in return for some act by another. *Id.* Here, the Site offers to connect a user, like plaintiff, seeking help with securing SSA benefits with a Third-Party Legal Professional (*e.g.,* Tabak Law). The Terms state:

10

"Users agree to comply with and be bound by the Agreement in its entirety" and confirm that DisabilityPath will connect the user, if the user requests, with Third-Party Legal Professionals, as the Terms in the "Preamble" makes clear. *See* Bhagavan Declaration, Exhibit B-1, p. 1 [Terms and Conditions]. An offer may be made in writing, orally, or implied in fact from the conduct of the parties and other circumstantial evidence such as in this online clickwrap agreement, which the foregoing discussion of plaintiff's conduct establishes here. *Id.*

The second element, acceptance of an offer or assent requires "a meeting of the minds, a factual condition that can be demonstrated by word or deed." *Nevill*, 364 F. Supp. 3d at 946 (cleaned up). Acceptance can be communicated in writing, orally, or implied from conduct. *Id.* Here, by navigating the Site, checking boxes, and clicking buttons to be connected with a Third-Party Legal Professional, plaintiff manifested his assent to the Terms.

The third element of a valid contract is consideration, which is evidence of the intent to be bound to the contract and consists of a benefit to the promisor or a detriment to the promise and legal liability on the persons making them. *Nevill*, 364 F. Supp. 3d at 947-48. The benefit to plaintiff (promisee) was that he would be connected to and would receive communications from Third-Party Legal Professionals. The benefit to Tabak Law – as a third-party beneficiary – is plaintiff's agreement, among other things, to resolve a dispute through arbitration. As evidenced by Plaintiff's failure to acknowledge the Terms or arbitration clause, arbitration is a detriment to plaintiff. Plaintiff and Tabak Law, a third-party beneficiary, made mutual promises to furnish each other with consideration.

As the foregoing shows, there was an offer, acceptance, and consideration, which resulted in a contract that provides for arbitration. As this action makes patently clear, there is a dispute arising from the Terms and the TCPA consent obtained from plaintiff and the Terms leaves the

issue of arbitrability to the arbitrator. However, once this Court determines if there is a written contract containing an arbitration clause, the Court must compel arbitration and stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

**B.    There is clear and unmistakable evidence that the parties agreed for the arbitrator to decide the question of arbitrability.**

The Terms incorporate arbitration rules explicitly granting arbitrators the authority to decide their own jurisdiction and arbitrability. The arbitration provision in the Terms defines a "dispute" broadly to include any dispute over the Terms themselves, the Site Offerings, and the Contract Services.[12] The Terms also clearly state that "each party agrees to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties, in accordance with the then current Commercial Arbitration rules of the American Arbitration Association (AAA)."[13]

Rule 7(a) of the AAA states that "the arbitrator shall have the power to rule on his or her own jurisdiction including objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without need to refer such matters first to a court." The Supreme Court and federal courts interpreting the FAA have established that parties may delegate threshold questions of arbitrability to an arbitrator if their agreement provides clear and unmistakable evidence of such intent. In *Henry Schein, Inc. v. Archer and White Sales, Inc*., the Supreme Court reaffirmed that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." 586 U.S. 63, 69 (2019). Similarly, the Court held that a delegation clause

---

[12] *See* Bhagavan Declaration, Exhibit B-1, pp. 10-11 [Event Log].

[13] *Id.*; *see Boehm v. Getty Images (US), Inc*., No. 16-CV-311-JDP, 2016 WL 6110058, at *3 (W.D. Wis. Oct. 19, 2016) ("Although the Seventh Circuit has yet to address the question, the consensus view is that *reference to the AAA's Rules in an arbitration clause reserves threshold questions of arbitrability to the arbitrator*.") (emphasis added).

12

assigning the authority to the arbitrator to resolve disputes about the enforceability of an arbitration agreement was valid under the FAA. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Wisconsin federal courts have applied this principle. In *Lathan v. Uber Technologies, Inc*., the Eastern District of Wisconsin held that the arbitration provision in the parties' agreement "clearly and unmistakably required arbitration of gateway questions of arbitrability," including disputes about the enforceability and validity of the arbitration provision. The court emphasized that such issues must be addressed by an arbitrator unless the delegation provision itself is unenforceable. 266 F. Supp. 3d 1170, 1173 (E.D. Wis. 2017). This decision aligns with the broader federal jurisprudence under the FAA and establishes that the arbitrator decides arbitrability.

Further, the incorporation of arbitration rules that explicitly grant arbitrators the authority to decide arbitrability further supports the delegation of such authority. In *First Options of Chicago, Inc. v. Kaplan*, the Supreme Court explained that "who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter." 514 U.S. 938, 943 (1995) (emphasis in original). This principle is echoed in a Western District of Wisconsin case, *Hodge Bros. v. DeLong Co*., where the court ruled that parties must arbitrate according to the terms of their agreement. 942 F. Supp. 412, 415 (W.D. Wis. 1996). The *Hodge* Court explained this principle very simply: "Parties are free to stipulate to any procedures they choose for the procedures governing the arbitration of their disputes, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys." *Id.*

There can be no clearer explication of this principle than AAA Rule 7, which clearly, unmistakenly, and in harmony with binding Supreme Court precedent leaves resolving the existence, scope, or validity of the Terms and the arbitration clause to the arbitrator.

**C.** **Even if the Court determines arbitrability has not been delegated to the arbitrator, the arbitrator must decide the remainder of the issues.**

In the event the Court here decides the arbitration provision does not delegate the question of arbitrability to the arbitrator, then for the sake of argument only, the Court would have to consider three elements, which are in favor of the Court compelling arbitration. *Bernal v. Kohl's Corp.,* 749 F. Supp. 3d 971, 974 (E.D. Wis. 2024). Tabak Law seeks an order directing that arbitration proceed in the manner provided for in the Terms. The FAA, 9 U.S.C. § 4, allows a party:

> aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

The court must compel arbitration here because as set forth above there is (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Bernal,* 749 F. Supp. 3d at 974. Each *Bernal* element is met here.

### 1. *There is an enforceable written agreement to arbitrate.*

The Court's analysis begins with this question: did the party sign a contract, because the party's signature "objectively demonstrate[s] assent to the contract." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010). Once answered, the Court next determines "whether the contract signed included an arbitration clause." *Id.* Any remaining questions are for the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04.

As argued above and reincorporated here for purpose of judicial economy, the Event Log, History Log, TrustedForm, Screen Recording Screenshot, and Illustration 1 are solid evidence that plaintiff visited the Site, entered his telephone number, checked the box, and clicked the button manifesting his assent to the Terms. He freely gave a name, his phone number, and acknowledged

14

his electronic signature granting consent to be contacted when he clicked the button. *See, e.g.,* Illustration 1. Therefore, there is a written clickwrap agreement to arbitrate.

## 2. There is a dispute within the scope of the arbitration agreement.

Courts may decide only those issues which relate to the "making" of an agreement to arbitrate. *Prima Paint*, 388 U.S. 395. All other issues, including matters relating to the validity, legality, or enforceability of a contract which contains an arbitration clause, are strictly issues for "an arbitrator to decide." *Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629, 630 (7th Cir. 1984); *see also*, *Schacht v. Beacon Ins. Co.*, 742 F.2d 386 (7th Cir. 1984). When the Court is confronted with a motion to compel arbitration, the analysis is limited to whether there is any triable dispute of fact as it relates to the making of the arbitration provision itself. Once the Court as here determines there are no issues relating to the making of the arbitration provision, then the court must recognize the line of cases upholding the contractual right to arbitrate and, accordingly, compel all other issues to the arbitrator to decide because arbitration clauses are strongly favored.[14]

While "all other issues," which fall to the arbitrator, is expansively broad, courts have provided clarifications on what issues specifically fall outside of a court's consideration and into the arbitrator's purview. As a preliminary matter, issues which challenge the contract, "as a whole," must be arbitrated and issues that challenge the arbitration clause, in particular, can be considered by the court. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Moreover, any collateral attack here on the validity of the Terms here itself does not void the enforceability of the arbitration provision. *See Colfax Envelope Corporation v. Local 458–3M, Chicago Graphic Communications International Union, AFL-CIO*, 20 F.3d 750, 754 (7th Cir.

---

[14] *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1 at 24-25 (1985) (stating that the Federal Arbitration Act is a "congressional declaration of a liberal federal policy favoring arbitration agreements" and that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

15

1994) (stating that courts should "not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable."). Rather, any such challenge falls squarely within the exclusive purview of the arbitrator.

Each of plaintiff's claims here is connected to the Terms; each claim is related to the underlying TCPA claims. Here, there is clearly a dispute that falls within the scope of the Terms and their validity, legality, or enforceability.

### 3. There is a refusal on plaintiff's part to arbitrate.

Plaintiff is a serial TCPA filer. He is named as plaintiff in more than sixty (60) putative TCPA class actions around the country. He is keenly aware of the use by Site hosts of Terms and arbitration provisions. Plaintiff's filing in this Court and failing to allege the Site's Terms evidences his refusal to proceed to arbitration, which satisfies the third and final element. Therefore, this matter must be compelled to arbitration.

### D. Additional issues exclusively for the arbitrator.

There are several additional issues that are issues for the arbitrator to decide when plaintiff is compelled to arbitrate, which Tabak Law, in an abundance of caution, discusses below, without waiver of any right to supplement these or any other arguments before the Court, if necessary, as this action progresses.

### 1. When plaintiff submitted his phone number, he gave permission and consent to be contacted by an intermediary.

The consent of the alleged called party – plaintiff here – can be obtained by Tabak Law through DisabilityPath acting as an intermediary. *See* 2014 FCC Declaratory Ruling, *In the Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("GroupMe"), 29 F.C.C. Rcd. 3442, 3444 (2014) ("[A] consumer's prior express consent may be obtained through and conveyed by an

16

intermediary."). On the page where plaintiff submitted the name and phone number, there is a link to "marketing partners." Illustration 1. Once the link to "marketing partners" is clicked, a pop up screen appears with a list of Marketing Partners, including Tabak Law LLC:

## Marketing Partners

Allsup
American Disability Alliance LLC Eric Pearson MBR
Associates And Avard Law Offices
Ball Johnson PC (Stu Johnson)
Benefit Representatives Of America
Berger And Green PC
Bill Gordon And Associates PA Bill Gordon And Associates
Binder And Binder PC
Binder And Binder Social Security
Brad Myler And Associates Inc
Brock And Stout LLC
Brown & Brown
Cardon Healthcare Network LLC
Carlson Meissner Hart And Hayslett PA Law Offices Of Carl
Catwig LLC Jason Krasno MBR
Charles D Hankey Law Office PC
Chermol And Fishman LLC
Christopher A Iannella Jr
Citizens Disability LLC
Coats And Todd PC
Connie
Crest SSD William H Junell Sole MBR
Crumley Roberts LLP
Daggett Shuler Nauman
Daley Disability Law PC
Daniel W McDonald PC McDonald Lawfirm
Deuterman Law Group PA
Disability Advantage Group LLC Matt Ooten MBR
Disability Champion
Disability Experts Of Florida Inc
Disability Help Center LLC

Scrolling to the bottom of the page, which is in alphabetical order, shows Tabak Law, LLC:

17

OConnor Accaini And Levy Co LPA
Olinsky And Associates PLLC
Packard Law Firm PLLC Dustin J Draper MBR
Pasternack Tilker Ziegler Walsh Stanton And Romano LLP
Pena And Bromberg A Professional Corporation
Pitts And Zanaty LLC
Premier Disability Services, LLC
Quikaid Inc David P Wright
Rabin And Associates LTD
Rainwater Holt And Sexton PA Michael R Rainwater
Rob Levine Law
Rotstein And Shiffman LLP
RSA - Milberg Grossman
Schott Mauss And Associates PLLC
Shook & Stone
Silver And Archibald LLP
Slepian Law Office PLLC Eric Slepian Sole MBR
Social Security Advocates For The Disabled LLC
Social Security Disability Advocates LLC Dustin Vidrine
Steppacher Law Offices LLC William C Steppacher Sole MBR
Tabak Law, LLC
The Law Offices Of Matt Greenbaum
The Morgan Firm PA Morgan And Morgan PA
Thomas R Nash PC
Trajector Disability LLC James Hill MBR
Troutman And Troutman PC
Turley Redmond Rosasco And Rosasco
Ungaro And Cifuni Attorneys At Law
Victor N Makris PC Makris Law Firm
Walkon Law Center PC
Wettermark And Keith LLC James H Wettermark MBR
Westmoreland Patterson Moseley And

Therefore, Tabak Law is an intended third-party beneficiary of the Terms and plaintiff's opt-in to the Site. A court in this District in *Andersen v. Harris & Harris, Ltd.* explicitly stated that individuals who knowingly release their phone numbers have effectively given their invitation or permission to be called at those numbers, absent instructions to the contrary. No. 13-CV-867-JPS, 2014 WL 1600575, at *9 (E.D. Wis. Apr. 21, 2014). The court explained that telemarketers do not violate rules by calling a number that was provided which the called party wishes to be reached.

A few years after *Andersen*, the Seventh Circuit in *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) explicitly addressed the principle that individuals who knowingly release their phone numbers effectively provide permission to be contacted at those numbers, absent contrary

instructions. The court cited the FCC's 1992 Order, which stated: "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* at 793. The FCC elaborated and clarified that telemarketers do not violate rules by calling a number provided by the called party as one at which they wish to be reached, which is precisely what happened here. *Id.* at 803.

Second, in *Balschmiter v. TD Auto Fin. LLC*, a court in this District acknowledged that agency principles could apply to prior express consent under the TCPA. 303 F.R.D. 508, 521 (E.D. Wis. 2014). The court cited the Eleventh Circuit's decision in *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110, 1118 & 1123 (11th Cir. 2014), which held that a wife's disclosure of her husband's cell phone number on a hospital admission form constituted prior express consent for debt collection calls. This decision relied on the FCC's 2014 ruling, which explicitly permitted consent to be "obtained and conveyed by an intermediary." *Balschmiter,* 303 F.R.D. at 521; *Mais,* 768 F.3d at 1123 ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.").

As the legal precedent, documents, and Illustration 1 show, at every step plaintiff understood that he would have to, by giving his consent to the intermediary's Terms, arbitrate any dispute. "In line with these principles and common law applications, courts must place arbitration agreements on an equal footing with other contracts [] and enforce them according to their terms," including against plaintiff here. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (cleaned up). When plaintiff provided his number, clicked the box, and clicked the button on the intermediary's Site, he agreed to arbitrate his dispute with Tabak Law.

19

### 2. Tabak Law is a named third-party beneficiary of the Terms.

Tabak Law is identified by name as a marketing partner, a third-party beneficiary on the Site, and is a member of the class meant and intended to benefit from the Terms, *i.e.*, "Third-Party Legal Professionals."[15] That fact establishes that the contracting parties intended to directly benefit Tabak Law. *See Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 394 (7th Cir. 2011) ("A person may enforce a contract as third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit.").

### 3. A non-signatory may compel arbitration under various circumstances.

Plaintiff on his own volition searched for information on the internet. He visited the Site. He wanted information the Site offered. He took advantage of the offer and agreed to the Terms. When he got what he wanted, he took the position that he had never consented to being contacted. As will be argued before the arbitrator, non-signatory Tabak Law may rely on equitable estoppel principles, third-party beneficiary, and agency theories as authority for Tabak to compel plaintiff-signatory to arbitrate. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (cleaned up) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . third party beneficiary theories . . . and estoppel.")

Federal courts, including the Seventh Circuit, have consistently recognized equitable estoppel as a basis for non-signatories to enforce arbitration agreements. In *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020), the Supreme Court explained that equitable estoppel allows a non-signatory to compel arbitration

---

[15] *See* Illustration 1. To access the list of Third-Party Legal Professionals, including Tabak Law, a user would click the purple hyperlink titled "marketing partners."

20

when a signatory's claims rely on the terms of the agreement containing the arbitration clause. The Court also emphasized that state law governs the application of equitable estoppel in arbitration cases under the FAA. *Id*. Here, plaintiff so far is denying that he gave consent to be called, despite the Terms he agreed to; yet, based on the proofs cited above, the consent issue in the Terms stands as a bar to plaintiff's claims.

The Seventh Circuit has applied equitable estoppel in cases where a signatory's claims are intertwined with the contract containing the arbitration clause. For instance, in *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981), the court held that a signatory was estopped from avoiding arbitration with a non-signatory because the claims against the non-signatory were based on the duties and responsibilities outlined in the contract. Similarly, in *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005), the court held that a non-signatory could compel arbitration when the signatory sought to benefit from the contract containing the arbitration clause.

Wisconsin case law states "that contractual rights and obligations extend to nonsignatories under various common-law principles," including third-party beneficiaries. *Dist. Council No. 7 v. Pepper Constr. Co.*, No. 20-CV-912-PP, 2023 WL 2760531, at *22 (E.D. Wis. Mar. 30, 2023); *see Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692, 699-700 (1966) (third-party beneficiary); *Dunn v. Pertzsch Constr. Co.*, 38 Wis. 2d 433, 436-38 (1968) (equitable estoppel). "[T]he obligation to arbitrate a dispute however is not always limited to those who have personally signed an agreement containing such a provision." *Scheurer v. Fromm Fam. Foods LLC*, 202 F. Supp. 3d 1040, 1043 (W.D. Wis. 2016), *aff'd,* 863 F.3d 748 (7th Cir. 2017) (cleaned up).

Under the third-party beneficiary doctrine, a non-signatory can compel arbitration if the agreement demonstrates an intent to directly benefit the non-signatory. While the *Scheurer* court

21

found that the language of the arbitration provision did not establish such intent, and therefore, the non-signatory could not enforce the agreement, the general proposition still applies here: Tabak has and can demonstrate – because it is a named beneficiary of the Terms – the intent for the Terms to directly benefit Tabak even though it is a non-signatory to the Terms. If this Court harbors any doubts about sending the parties to arbitration under the FAA, then "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### E. Plaintiff lacks standing because he does not sufficiently allege a concrete harm.

A bare procedural violation, divorced from any concrete harm, does not constitute an injury sufficient to allege standing to sue under Article III of the U.S. Constitution. This principle has been consistently upheld in both federal and state cases in Wisconsin, the Seventh Circuit, and the U.S. Supreme Court. In *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019), the court held that procedural injuries under consumer-protection statutes are insufficiently concrete to confer standing. The plaintiff alleged a violation of the Fair Debt Collection Practices Act ("FDCPA") but did not claim any harm or appreciable risk of harm resulting from the violation. The court explained that the plaintiff had alleged "a statutory violation completely removed from any concrete harm or appreciable risk of harm," which was insufficient under Article III. *Id.*

Similarly, in *Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267 (7th Cir. 2021), the Seventh Circuit again affirmed the dismissal of a claim under the FDCPA for lack of standing. The plaintiff alleged that the debt collector sent letters with inconsistent debt amounts and unclear creditor identification but did not allege any harm caused by the misinformation. The court reiterated that confusion or aggravation caused by a procedural violation does not constitute a concrete injury. *Id.*; *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064-65 (7th Cir. 2020)

22

(explaining that when a plaintiff sues for "a bare procedural violation" of a statute and has not alleged a concrete personal injury, he has not satisfied the injury-in-fact requirement of Article III).

In *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022), the Seventh Circuit applied the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435, 141 (2021) to hold that a risk of harm, without actual harm, is insufficient to establish standing for claims seeking monetary damages. The plaintiff alleged that a misleading debt collection letter created a risk of harm, but the court found that no harm had materialized, aligning the case with prior decisions of *Casillas* and *Larkin*. *Casillas*, 926 F.3d at 332; *Larkin*, 982 F.3d at 1064-65.

The Supreme Court has also provided foundational guidance on this issue. In *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *revised* May 24, 2016, the Court held that a bare procedural violation of the Fair Credit Reporting Act ("FCRA"), divorced from any concrete harm, does not satisfy the injury-in-fact requirement for Article III standing, and that not all inaccuracies or procedural violations cause harm or present a material risk of harm. For example, the dissemination of an incorrect zip code, without more, would not constitute a concrete injury. *Id.* In short, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*

In *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021), the Court reinforced this principle, stating, "[n]o concrete harm, no standing." The Court distinguished between class members who suffered actual harm (e.g., dissemination of inaccurate credit reports to third parties) and those who did not, holding that the latter group lacked standing and that a plaintiff must "demonstrate standing separately for each form of relief sought." *Id.* (citing *Friends of the Earth v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167, 185 (2000)). "Therefore, a plaintiff's

23

standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *Id.*

Here, the Site offers a ***free*** case evaluation, as Illustration 1 establishes. Not one of the offending texts is alleged to be a telephone solicitation under the TCPA. *See* Compl. ¶¶ 12, 45-58. As the texts themselves demonstrate, the purpose of the communications was ***not*** to encourage anyone to make a purchase or pay for services. Plaintiff's claims, which rely on text messages being "telephone solicitations" therefore do not establish a concrete and particularized injury to plaintiff.

The Seventh Circuit recently affirmed entry of summary judgment against a TCPA plaintiff and adopted the Eastern District of Wisconsin's interpretation of the phrase "telephone solicitations." *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 500 (7th Cir. 2025). The Seventh Circuit held that "a 'telephone solicitation' requires that the call or message be initiated with the purpose of persuading or urging someone to pay for property, goods, or services." ***The Hulce plaintiff could not meet this standard because the services at issue were offered to him free of charge***. *Id.* The decision solidifies an interpretation of "telephone solicitation" that has emerged in various district courts over the past few years. Here, plaintiff suffered no actual harm personally by receiving legally permissible text messages or voicemails or by relying on a bare procedural violation, divorced from any concrete harm.

## IV. CONCLUSION

Based on the foregoing, and any subsequent briefing or oral argument on the motion, Tabak Law moves the Court to enter an Order that directs the parties to proceed to arbitration and stays this proceeding until such arbitration is held pursuant to 9 U.S.C. §§ 2-4 and in accordance with the Terms.

24

Date: October 6, 2025

Respectfully submitted,

By: /s/Hannah M. Binau
Hannah M. Binau # 1135862
Stephanie Dykeman# 1035857
Litchfield Cavo LLP
250 E. Wisconsin Avenue, Suite 800
Milwaukee, WI 53202
Phone: (414) 488-1833 (Dykeman)
Phone: (414) 488-1834
Fax: (414) 875-3331
Dykeman@LitchfieldCavo.com
Binau@LitchfieldCavo.com

By: /s/Jeffrey Gilbert
**JEFFREY GILBERT**
**(*Pro Hac Vice to be Filed*)**
Florida Bar No. 375411
Jeffrey.Gilbert@gmlaw.com
Melissa.Fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL 33131
Direct Phone Number: 305-789-2761
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certified that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/Hannah M. Binau
Hannah M. Binau # 1135862